**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

HOWARD AYERS,

                            Plaintiff,

        v.                                        No. 07-CV-466
                                                    (TJM/DRH)

DONALD SELSKY, Director; and C.
DROWN, Hearing Officer;

                            Defendants.
_____

**APPEARANCES:**                        **OF COUNSEL:**

HOWARD AYERS
Plaintiff Pro Se
93-A-2932
Elmira Correctional Facility
Post Office Box 500
Elmira, New York 14902

HON. ANDREW M. CUOMO          ADELE M. TAYLOR-SCOTT, ESQ.
Attorney General for the              Assistant Attorney General
  State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER[1]**

    Plaintiff pro se Howard Ayers ("Ayers"), an inmate in the custody of the New York State

Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. §

1983 alleging that while he was incarcerated, the two defendants, both DOCS employees,

violated his constitutional rights under the Due Process Clause of the Fourteenth

_____

     [1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Amendment.  Compl. (Docket No. 1).  Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Docket No. 23, 29.  Ayers opposes the motion. Docket No. 27, 30.  For the following reasons, it is recommended that defendants' motion be granted.

## I. Background

The facts are related herein in the light most favorable to Ayers as the non-moving party.  See subsection II(A) infra.

As relevant to the present motion, all facts relate to Ayers' incarceration at Clinton Correctional Facility.  Ayers has been an active member of the Nation of Islam ("NOI") since approximately 1995.  Ayers Dep. (Docket No. 23-5) at 11, 25. On August 31, 2005, Ayers was issued a misbehavior report for (1) unauthorized organization of activities and (2) leading or organizing inmates to participate in an action detrimental to the facility.  Drown Aff. (Docket No. 23-3) at ¶ 2; Docket No. 23-3 at 17.  The misbehavior report states that non-party Allan conducted an investigation into an incident amongst NOI members, Ayers admitted that he submitted scheduling an NOI assembly which changed the name of twenty-two inmates at Clinton, and Allan concluded that Ayers was not an approved facilitator of the NOI, and Ayers' actions sought to supplant and subvert the NOI administration and services.  Docket No. 23-3 at 17.

The disciplinary hearing on the misbehavior report was held on September 6 or 8, 2005 before defendant Drown as the hearing officer.  Hearing Transcript (hereinafter "Hearing")

2

(Docket No. 23-3) at 30-70.[2]  Prior to the hearing, Ayers was provided with an inmate assistant, non-party Harrison.  Drown Aff. ¶¶ 5-6.  Harrison interviewed Ayers on September 5 but failed to provide Ayers with statements from witnesses Ayers wished interviewed or documents he requested.  Id. ¶¶ 5-6; Ayers Dep at 71-72 (outlining that Ayers wanted to obtain the documents used in the disciplinary hearing prior to the hearing).  There is no record of these complaints in the hearing transcript.  Drown Aff. ¶¶ 7, 8, 13.  However, Ayers avers that once he listened to the audio tape of the hearing and noted the omission, he submitted a supplemental administrative appeal  which should have been immediately addressed by defendants, but was not.  Ayers Aff. ¶ 27.[3]

When Ayers arrived at the hearing, he submitted a six-page written statement which was incorporated into the record but not read aloud.  Drown Aff. ¶¶ 8, 9, 14; Docket No. 23-3 at 22-28; Hearing at 32.  This statement listed Ayers' complaints including (1) the lack of foundation for the misbehavior report, (2) the lack of specificity in the report, and (3) the legitimacy of his appointment as NOI representative.  Docket No. 23-3 at 22-28.  This statement represented the entirety of Ayers' complaints.  Drown Aff. ¶¶ 10, 46.  After accepting the statement, Drown adjourned the hearing to read the statement.  Id. ¶ 14; Hearing at 34.

---

[2] The hearing was conducted on September 6, 2005 at 10:39 a.m. and concluded thereafter, either on that day or on September 8, 2005 at 1:40 p.m.  Ayers Aff. ¶¶ 43-44; Ayers Aff. #2 (Docket No. 27-3 at 1-5) ¶ 13 .  The hearing record is dated September 8, 2005 at 1:40 p.m.  Ayers Dep. at 86; Ayers Aff. ¶¶ 45, 47.

[3] The supplemental appeal was submitted on December 6, 2005, three months after Ayers submitted written statements during his hearing and to defendant Selsky, then the DOCS official in charge of appeals of disciplinary hearings, complaining of the process Ayers received during his hearing, and over a month after Selsky's decision on Ayers' first appeal.  Docket Nos. 27-2 at 37-39,

One charge against Ayers alleged that he was not an authorized NOI representative.

Drown Aff. ¶ 15.  Ayers claimed that he was appointed the NOI "representative" by Minister

Robert Muhammad during a meeting on June 18, 2005.  Drown Aff. ¶ 15; Hearing at 34

Ayers Dep. at 45-46.[4]  At the hearing, Ayers requested Muhammad as a witness, but Ayers

did not know where Muhammad could be reached.  Drown Aff. ¶ 17; Hearing at 34-34.

Drown took a recess to attempt to locate Muhammad and discovered that Muhammad had

retired on July 10, 2008 and was never assigned to, or employed at, Clinton.  Drown Aff.

¶¶18-22, 26; Hearing at 40-41.  Drown concluded that Muhammad

> did not have the authority to appoint Mr. Ayers to act on behalf of
> the [NOI] at Clinton.  Thus, the Minister's anticipated testimony . . .
> was not germane to the issue of whether Mr. Ayers was properly
> authorized to act, and to the extent that the Minister's testimony
> may have had some relevance . . . such testimony would have
> been cumulative, at best.

Drown Aff. ¶¶ 22, 45, 48.  Ayers conceded that he was never authorized by Clinton to be a

facilitator of the NOI but was appointed by Mohammad as a representative with three other

individuals.  Hearing at 35-39.

Ayers contends that the failure to procure Muhammad's testimony was a constitutional

violation.  Ayers proffers that the testimony of Muhammad would have established that

Ayers was appointed a "representative."  Ayers Dep. at 76; Muhammad Aff. (Docket No. 27-

2 at 30-32) ¶¶ 6-8.  Additionally, the testimony would have demonstrated that, on or about

―――――――――――

[4] Ayers defines the position of representative as one "who is acquainted with the teachings" and assists the facilitator and chaplain with paperwork and organizing religious events. Ayers Dep. at 14.  Ayers concedes that he has no knowledge as to whether the representative position is recognized by DOCS. Id.  Ayers has never sought formal approval from DOCS for such a position. Id. at 14-15.  DOCS does not recognize the position of "representative" other than the facilitator. Hearing at 60.

August 6, 2005, Ayers received a letter from Muhammad stating that he had informed

DOCS of Ayers' appointment.  Ayers Dep. at 34-35, 76; Ayers Aff. ¶ 19; Muhammad Aff. ¶

9. When Muhammad learned of Ayers' misbehavior report, he contacted Clinton on

September 5 and 6, 2005 and confirmed that he had appointed Ayers as a representative.

Muhammad Aff. ¶ 11, 12; Docket Nos. 27-2 at 41, 27-3 at 11.[5]

During his disciplinary hearing, Ayers also requested the testimony of Brown, the

authorized NOI facilitator approved by Clinton,[6] and Rev. Sprenger, the acting NOI religious

advisor at the time.  Drown Aff. ¶ 24; Docket No. 23-3 at 16.  Brown testified that he

informed Rev. Sprenger at an August 24, 2005 meeting that he was retiring as the NOI

facilitator and that Ayers would be acting as a substitute facilitator.[7]  Drown Aff. ¶ 25;

Hearing at 42-43.  This was supported by a letter, dated September 5, 2005, which was

offered into evidence, and as were Brown's statements that Ayers was not attempting to

supplant Brown from his position as facilitator.  Drown Aff. ¶ 25; Hearing at 48-49, 53;

Brown Aff. (Docket No. 27-2 at 15-16) ¶¶ 9-10.  Brown also testified that Ayers had been

appointed by Muhammad to represent the NOI on June 18, 2005 but confirmed that

Muhammad was not appointed as a religious member at Clinton.  Drown Aff. ¶ 26; Hearing

at 50-51; Ayers Dep. at 33-34; Brown Aff.¶ 4.  Additionally, Brown stated that the only

---

[5]Muhammad was rehired by DOCS after Ayers' disciplinary hearing.  Ayers Dep. at 80.  Even during his brief retirement, Muhammad's "contact information was in fact at both the Albany office as well as the New York City office and no one contacted him."  Ayers Aff. ¶ 23.

[6] Brown was approved for this position by the Clinton superintendent.  Hearing at 41-42.

[7] According to Brown, it was common knowledge that he and Ayers worked on NOI issues together.  Brown Aff. ¶¶ 5, 8.

individuals authorized to schedule NOI services or meetings were facilitators and facility

religious advisors.  Drown Aff. ¶ 26; Hearing at 51-53.  Drown partially credited Brown's

testimony.  Drown Aff. ¶ 27.

   Rev. Sprenger testified that he held a meeting on August 24, 2005 at which Ayers failed

to report that Muhammad had appointed him a representative at the previous meeting on

June 18.  Ayers Dep. at 50-51.  At that meeting, Rev. Sprenger was handed a meeting

schedule and list of attendees by Ayers.  Rev. Sprenger reviewed the schedule and list a

few days later and noted "instructions to him to 'remove all names from the NOI Saturday

list . . . [and] only add the following new names.'" Drown Aff. ¶¶ 30-31; Hearing at 57, 59,

61-62; Docket No. 23-3 at 81.  This caused concern and led Rev. Sprenger to delay issuing

the schedule pending the arrival of the new chaplain and to produce the list to the Clinton

Deputy Superintendent to address any procedural deficiencies.[8]  Drown Aff. ¶¶ 30-31;

Hearing at 57, 59, 61-62; Docket No. 23-3 at 81.  Ayers claims that the amended list was "to

get . . . active individuals who wanted to go to class on that list, compared to the individuals

who were previously on the class that wasn't [sic] showing."  Ayers Dep. at 55.[9]  Rev.

Sprenger also testified that Brown verbally resigned as facilitator at the August 24 meeting

but was instructed that Rev. Sprenger could not act upon the resignation until he received it

in writing.  Drown Aff. ¶ 32; Hearing at 60-61.  Rev. Sprenger never received any formal

notification from Brown, despite Brown's contentions that he mailed it.  Drown Aff. ¶ 32;

---

[8] Of the 22 amended names to be added to the call out list, the majority of them
appeared to be approved and registered NOI members.  Hearing at 66-67.

[9] In a later submission, Ayers claims that "Brown admitted that it was he who
selected and removed the names for the list . . . " Docket No. 27 at 10.

Hearing at 42-43, 61.

Drown found Ayers guilty on both charges, finding that Ayers and another party "conspired and attempted to improperly effect change in an authorized religious group, and that such action would have had the effect of preventing others from practicing their professed religion in a manner acceptable to them." Drown Aff. ¶ 40; Docket No. 23-3 at 14-15; Hearing at 69-70. Additionally, actions such as the unauthorized amendment of a meeting schedule and attendance list constituted "a significant threat to the safety of the facility." Drown Aff. ¶ 40; Hearing at 70. Ayers was sentenced to 140 days confinement in the Special Housing Unit ("SHU").[10] Drown Aff. ¶ 41; Hearing at 69. On September 9, 2005, Ayers was provided a summary detailing the statements given by the two witnesses Ayers was unable to call during the hearing. Docket Nos. 23-3 at 18, 27-3 at 19.

Ayers appealed the determination to Selsky on the grounds that (1) he was unlawfully penalized for following the orders of Muhammad, a DOCS employee, appointing him as NOI representative; (2) he was unconstitutionally denied the testimony of Muhammad at his hearing; (3) the evidence was insufficient for findings of guilt; (4) the NOI is an authorized organization and the charge of unauthorized group activity was thus improper; (5) the misbehavior report failed to give Ayers adequate notice of the basis of the charges; and (6) the misbehavior report failed to outline particulars upon which he could be charged with unauthorized group activity. Selsky Aff. (Docket No. 23-4 at 1-4) ¶ 5; Docket No. 23-4 at 8-

---

[10]SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ." N.Y. Comp. Codes R. & Regs. tit. 7, § 300.2(b) (2007). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. Id. at pt. 301.

12.  Ayers did not contend that he was denied meaningful pre-hearing assistance.  Selsky Aff. ¶ 6.  On November 2, 2005, Selsky reversed Ayers' conviction for unauthorized inmate activity.  Selsky Aff. ¶ 18; Drown Aff. ¶ 42; Docket Nos. 23-3 at 19, 23-4 at 6-7. However, the sentence was not modified and the vacated charge "did not result in the denial of any additional liberty interest."  Drown Aff. ¶ 43; Selsky Aff. ¶ 19 (explaining that the conviction was appropriate for violating the facility rule prohibiting inmates from participating or leading others in a way detrimental to the facility).  This action followed.

## II.  Discussion

In his complaint, Ayers alleges that defendants violated his due process rights by failing to (1) provide him with proper notice, assistance, and a fair and impartial hearing; (2) follow DOCS rules and procedures, and (3) provide him with a meaningful appeal process. Defendants claim that Ayers has failed to state a claim and that they are protected by qualified immunity.

## A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248

(1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks dismissal or summary judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, ... a court is obliged to construe his pleadings liberally.'" (citations omitted)).  However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion; the requirement is that there be no genuine issue of material fact.  Anderson, 477 U.S. at 247-48.

9

### B. Fourteenth Amendment

### 1. Due Process

### a. Liberty Interest

As a threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property. See Perry v. McDonald, 280 F.3d 159, 173 (2d Cir. 2001). To establish a protected liberty interest, a prisoner must satisfy the standard set forth in Sandin v. Conner, 515 U.S. 472, 483-84 (1995). This standard requires a prisoner to establish that the deprivation was atypical and significant in relation to ordinary prison life.  Id. at 484; Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir.1999); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir.1996). The fact that an inmate has been disciplined with a SHU confinement alone is insufficient to establish an atypical and significant deprivation.

The Second Circuit has articulated a two-part test whereby the length of time a prisoner was placed in SHU as well as "the conditions of the prisoner's confinement in SHU relative to the conditions of the general prison population" are to be considered.  Vasquez v. Coughlin, 2 F. Supp. 2d 255, 259 (N.D.N.Y.1998) (citing Brooks v. DiFasi, 112 F.3d 46, 49 (2d Cir. 1997)).   The Second Circuit has noted that where the period of confinement exceeds thirty days, "refined fact-finding" is required to resolve defendants' claims under Sandin.  Colon v. Howard, 215 F.3d 227, 230 (2d Cir. 2000); see also Davis v. Barrett, No. 08-CV-479, 2009 WL 2411811, at *3-5 (finding questions of fact and insufficient record to grant defendants' summary judgment under Sandin where plaintiff spent sixty days in SHU). Ayers spent 140 days in confinement and, therefore, questions of fact exist as to the liberty interest asserted by Ayers.  Accordingly, defendants' motion on this ground should be

denied.

### b. Defective Disciplinary Report[11]

Ayers contends that his disciplinary report was defective as he did not engage in the activities with he was charged in the misbehavior report.  Ayers possessed no constitutional right to be free "from falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest," but he is still entitled "not to be deprived of a protected liberty interest without due process of law."  Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986).  Thus, a fair hearing would cure any due process violations resulting from false accusations.  Grillo v. Coughlin, 31 F.3d 53, 56 (2d Cir. 1994); Livingston v. Kelly, 561 F. Supp. 2d 329, 331 (W.D.N.Y. 2008) ("As the Second Circuit noted . . . , an inmate's allegation that he has been found guilty of false disciplinary charges may support a constitutional claim if he also alleges that he was denied the minimal procedural due process protections . . . .").

However, as discussed infra, as Ayers was not denied the procedural due process protections, defendants motion on this ground should be granted.

---

[11] It appears that Ayers' claims may run afoul of the "favorable termination rule" of Heck v. Humphrey, 512 U.S. 477, 487-87 (1994).  That rule provides that if a determination favorable to the plaintiff in a § 1983 action "would necessarily imply the invalidity of his conviction or sentence," a plaintiff must prove that the conviction or sentence has been reversed on direct appeal or declared invalid in order to prevail under § 1983.  This rule apples to challenges to procedures used in prison disciplinary proceedings.  Edwards v. Balisok, 520 U.S. 641 (1997).  If Ayers prevails, the invalidity of his conviction and sentence would necessarily be implied.   Selsky Aff. ¶¶ 18-19; Drown Aff. ¶¶ 42-43.  However, defendants have not raised this argument and it will not be further considered.

### c. Fair and Impartial Hearing[12]

While inmates are not given "the full panoply of [due process] rights," they are still

afforded procedural process.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  Prisoners are

"entitled to advance written notice . . . ; a hearing affording him a reasonable opportunity to

call witnesses and present documentary evidence; a fair and impartial hearing officer; and a

written statement of the disposition including the evidence relied upon and the reasons for

the disciplinary actions taken."  Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004) (citations

omitted).


### i. Notice

Due process requires written notice twenty-four hours prior to the commencement of a

formal disciplinary hearing in order "to give the charged party a chance to marshal the facts

in his defense and to clarify what the charges are . . . ."  Wolff, 418 U.S. at 564 (citations

omitted).  "The effect of the notice should be to compel the charging officer to be sufficiently

specific as to the misconduct . . . charged to inform the inmate of what he is accused of

doing so that he can prepare a defense to those charges . . . ."  Taylor v. Rodriguez, 238

F.3d 188, 192-93 (2d Cir. 2001) (citations omitted).  Such notice guarantees a meaningful

hearing whereupon a prisoner can properly defend himself against the pending charges.  Id.

---

[12] To the extent that Ayers contends that Drown tampered with the audio tape of the hearing, such allegations are serious and raise questions of, inter alia, the impartiality of the hearing officer.  Odom v. Kerns, No. 99-CV-10668 (KMK/MHD), 2008 WL 2463890, at *11 (S.D.N.Y. June 18, 2008) (citations omitted).  Despite Ayers allegations and late submission of his amended administrative appeal, the record belies his conclusory allegations of altercations.  As the motion here is for summary judgment, more than conclusory allegations need be proffered to sustain the claim.  Accordingly, defendants' motion should be granted as to any such claims.

at 193.

In this case, Ayers does not contest the timeliness of the notice but only its sufficiency. Ayers insists that his misbehavior report was deficient because, with respect to the charge which survived appeal and was the basis of the disposition, the misbehavior report did not specify dates or times when Ayers participated in a prohibited activity.  However, the misbehavior infraction contains a second part stating that advising that inmates were prohibited from engaging in actions which detrimental to the order, safety, and security of the facility and its inmates.  Drown Aff. ¶ 2; Docket No. 23-3 at 17.  Courts have generally afforded "prison officials deference in executing policies and practices to preserve order and discipline and to maintain the security of the institution."  See generally Mason v. Peters, 346 F. Supp. 2d 396, 399 (W.D.N.Y. 2004).  It is clear that such contentions, which were the result of a thorough investigation, required deference as prison officials could easily perceive threats to the safety of inmates and staff from an unauthorized inmate arranging a meeting for certain inmates whom he selected at a location with minimal security present, causing confusion as to which inmates were allowed to participate in what activities, and when.

Additionally, in this case, the misbehavior report provided adequate notice.  It outlined the charges that Ayers submitted an altered schedule to DOCS administration without proper authorization on behalf of the NOI community.  In response, Ayers entered the disciplinary hearing with a six-page written statement objecting to the substance and form of the misbehavior report.  Drown Aff. ¶¶ 8-9, 14; Docket No. 2303 at 22-28.  This action alone belies any contention that Ayers was unaware of the charges against him.  See Sira, 380 F.3d at 70-71 (explaining that proper notice should indicate the "inmates toward whom . . .

13

[the] misconduct was directed," as well as "describ[ing] words, actions, [and] means employed by [the inmate] to further [the misconduct].").  Even construing the facts in the light most favorable to Ayers, such notice would not have allowed him to produce such an accurate and compelling statement in opposition to the charges at hand.

Finally, the first charge in the misbehavior report dismissed on administrative appeal by Selsky.  Any alleged constitutional violation as to that charge was vitiated by the dismissal. Moreover, as the appeal did not affect the sentence of 140 days in SHU, Ayers suffered no cognizable deprivation with regard to the first charge.

Accordingly, defendants' motion on this ground should be granted.


### ii.  Opportunity to Present Defense

Ayers claims that he was denied (1) his right to confront a confidential informant who provided evidence at the disciplinary hearing, (2) an independent assessment of the confidential informant's credibility, and (3) assistance in preparing his defense.

"Courts have long recognized, however, that the right to know evidence supporting prison disciplinary rulings is not absolute."  Sira, 380 F.3d at 74 (citations omitted). Because correctional facilities present "risks of violence or intimidation directed at other inmates or staff . . . [a hearing officer may decline] disclosure of evidence [in light of] such risks . . . ."  Id. at 75 (internal quotation and citation omitted).  Generally the judgment of a prison officer in this context will not be questioned as long as there is "freedom from arbitrary governmental action."  Id. (citations omitted).  Accordingly, when such procedural rights are denied, "prison officials . . . must offer a reasonable justification for their actions . . . ."  Id. (citations omitted).

In this case, Ayers claims that he should have been given the opportunity to confront the confidential informant upon whose testimony Allan relied in issuing the misbehavior report. However, "an inmate has no due process right . . . to confrontation [in a prison disciplinary proceeding] . . . and hearing officers are accorded considerable discretion to review evidence [although] a prisoner may be left in total ignorance of facts . . . because the government seeks to protect confidential sources." United States v. Abuhamra, 389 F.3d 309, 325-26 (2d Cir. 2004) (citing Wolff, 418 U.S. at 567-68).  Therefore, Ayers had no right to confront the confidential informant.  Additionally, both the informant's and Allan's articulated fears of reprisals indicate that a reasonable basis existed for failing to include Ayers in the special testimony.  However, Ayers did have a right to know to what the informant testified, which was provided when Ayers was given a copy of the transcript of the special proceeding.  Docket No. 27 at 26-31.  Thus, defendants also complied with their obligation to provide Ayers as much information as practicable while still preserving the safety and secrecy of the informant.

Additionally, Drown sufficiently assessed the informant's credibility and reliability. Where confidential informants provide incriminating information, there must be "some examination of indicia relevant to an informant's credibility." Taylor v. Rodriguez, 238 F.3d 188, 194 (2d Cir. 2001) (citing Giakoumelos v. Coughlin, 88 F.3d 56, 61 (2d Cir. 1996)); see also Sira, 380 F.3d at 76-78 (noting that when cross-examination is not available, the need for an independent assessment of informant credibility is heightened).  When confidential information is comprised of multiple levels of hearsay, hearing officers must consider a "totality of the circumstances" to determine the reliability of such information.  Sira, 380 F.3d at 78.

15

Contrary to Ayers' contentions, credibility need not be determined solely by an interview of the informant.  See Russel v. Scully, 15 F.3d 219, 223-24 (2d Cir. 1993) (holding that as long as the hearing officer "examine[s] and take[s] into account reliable indicia of the informants' credibility, he enjoys an immunity from this action.").  In this case, as in Russell, Drown inquired into the past reliability of the confidential informant, seeking facts as well as Allan's opinion as to the informant's reliability.  Id. at 223 ("The question, 'Has this informant a history of reliability?" differs from the question, 'Do you believe the informant?'  The former seeks to elicit matters of historic fact while the latter calls for an opinion.").  As the informant's information was also hearsay provided by Allan, Drown was required to apply careful scrutiny to consider the totality of the circumstances under which the informant's testimony was provided.  The facts that Allan had worked with the informant on multiple occasions and that the informant had thus far been reliable every time he was used compel the conclusion that a proper credibility determination was made.

Additionally, "[p]rison authorities have a constitutional obligation to provide assistance to an inmate in marshaling evidence and presenting a defense when he is faced with disciplinary charges."  Eng v. Coughlin, 858 F.2d 889, 897 (2d Cir. 1988).  Such an assistant is designed to help inmates "gather[] evidence, obtain[] documents and relevant tapes, and interview[] witnesses.  At a minimum, an assistant should perform the investigatory tasks which the inmate, were he able, could perform for himself."  Id. at 898.  The Second Circuit has also held "that for inmates disabled by confinement in SHU . . . the right to substantive assistance is an obligation . . . [to] be provided in good faith and the best interests of the inmate."  Id.  Any violations of this right to assistance are reviewed to assess "whether the error was harmless or prejudicial."  Powell v. Coughlin, 953 F.2d 744,

16

750 (2d Cir. 1991).

In this case, Ayers was provided with an inmate assistant who allegedly interviewed Ayers, received requests for witnesses and documents, and never reappeared to assist Ayers.  Drown Aff. ¶¶ 5-6; Ayers Dep. at 71-72.  While these allegations are belied by the Ayers' letter of objection and the appeal to Selsky asserting every procedural deficiency except the lack of inmate assistance, the facts must be construed in the light most favorable to Ayers.  So viewed, Ayers' claimed lack of assistance must be credited for purposes of this motion.

The lack of assistance is only actionable, however, if it caused prejudice or harm to Ayers.  Powell, 953 F.2d at 750.   At the commencement of the hearing, despite the inmate assistant's failure to provide Ayers with the underlying documents upon which the misbehavior report was based, Ayers was still able to submit a six-page written opposition that called into question the lack of foundation for his misbehavior report, its faulty notice of the charges, and his legitimacy as an appointed NOI representative.  Docket No. 23-3 at 22-28.  The objection was cogent and well-written.  Moreover, despite the failure of the inmate assistant to help in interviewing witnesses, Ayers was still able to call and question two individuals during the hearing.  Hearing at 49-56, 61-63.  Ayers also cross-examined Allan effectively without the benefit of examining the underlying documents prior to the hearing.  Id. at 65-69.  Finally, to the extent that Ayers contends that an inmate assistant could have found Muhammad obtained his testimony, such contention is irrelevant as Muhammad's testimony was not exculpatory and was cumulative.

Furthermore, despite the ineffectiveness of the inmate assistant, Ayers constructed an appropriate record and authored a persuasive appeal which led to the reversal of his

conviction on one of the two charges.  Selsky Aff. ¶¶ 18-19.  The vacated charge did not

result in a change in the disciplinary sentence. but Ayers was not subjected to additional

confinement or harm.  Such success on appeal indicates that Ayers competently and

persuasively argued his case and appeal.  As such, no harm or prejudice befell him when

the inmate assistant failed to perform his duties.

Accordingly, defendants' motion on this ground should be granted.


### iii. Right to Call Witnesses

Ayers' principally contends that he was precluded from calling Muhammad as a witness

at his hearings.  However, "[i]t is well settled that an official may refuse to call witnesses as

long as the refusal is justifiable [such as] . . . on the basis of irrelevance or lack of

necessity."  Scott v. Kelly, 962 F.2d 145, 146-47 (2d Cir. 1992) (internal quotation marks

and citations omitted); see also Richardson, 833 F. Supp. at 152.

In this case, Drown attempted to find Muhammad and could not, as he was retired from

DOCS employment at the time.  Additionally, while adjourning the hearing to investigate,

Drown discovered that Muhammad, while a DOCS employee, had no authority at Clinton.

Drown Aff. ¶¶ 22, 45, 48; see also Hearing at 50-51; Brown Aff. ¶ 4.  Ayers contends that

Muhammad was requested to visit Clinton by himself and Leonard to assess the NOI

unrest, Muhammad appointed him as a representative for the NOI and Muhammad

informed multiple individuals at Clinton and beyond of Ayers' appointment.  Ayers Aff. ¶¶

18-19; Muhammad Aff. ¶¶ 1-2, 6-10.  However, Muhammad lacked the authority to appoint

Ayers to any position recognized by DOCS and, therefore, any testimony Muhammad were

to provide would not exculpate Ayers because Ayers was never authorized to schedule

18

meetings or take any other action on behalf of the NOI.[13]  Muhammad's conclusory allegations to the contrary are insufficient to rebut that fact.

Additionally, Ayers does not dispute that he was not a facilitator, the only representative position recognized by DOCS, or that he never received approval from Clinton to act in a comparable position.  Ayers Dep. at 18.  Moreover, the testimony by Brown, Rev. Sprenger, and Allan all established the fact that only the facilitator, who required authorization from the Superintendent, could schedule a meeting and list those authorized to attend.  Drown Aff. ¶ 26; Hearing at 51-53.  Even with a newly appointed representative position, and construing all the facts in the light most favorable to Ayers, there is no evidence that Ayers received proper authorization to engage in the actions that he did or that Muhammad was able to confer such authority on Ayers.  As such, Drown offered justifiable reasons as to why further delay in the hearing was unjustified to locate Muhammad for testimony.

Thus, defendants' motion should be granted on this ground.


### iv. Disposition[14]

The Second Circuit has held that once "the procedural due process requirements have

---

[13] To the extent that Ayers contends that he was following orders from Muhammad as a DOCS employee, such orders must be lawful and, as Muhammad did not have the authority to appoint Ayers to any position, any such orders would be unlawful.  Docket No. 27-3 at 13, ¶ 1.

[14] To the extent that Ayers claims constitutional violations because DOCS did not follow their own policy in any respect, such claims cannot lie.  See generally Russell v. Coughlin, 910 F.2d 75, 78 (2d Cir. 1990) ("The fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action does not settle what protection the federal due process clause requires.") (internal quotation marks and citations omitted); Dixon, 224 F. Supp. 2d at 744-45.

been met, its function is to determine whether there is *some* evidence which supports the [disciplinary] . . . decision." <u>Franco v. Kelly</u>, 854 F.2d 584, 588 2d Cir. 1988).  The requirements of due process are satisfied if some evidence supports the decision by the [hearing officer] . . " and the test is whether there was "'reliable evidence' of the inmate's guilt." <u>Luna v. Pico</u>, 356 F.3d 481, 487-88 (2d Cir. 2004); <u>see also</u> <u>Superintendent, Mass. Corr. Inst. v. Hill</u>, 472 U.S. 445, 455 (1985) ("Requiring a modicum of evidence to support a decision . . . will help prevent arbitrary deprivations without threatening institutional interests . . . .").

   In this case, even construing the facts in the light most favorable to Ayers, there is sufficient information to conclude that he was guilty of attempting to incite prisoners to participate in an action contrary to penological interests.  It is undisputed that Ayers was never appointed to a position of authority by an appropriate source and given the requisite facility approval.  As such, he was not properly authorized to schedule meetings or determine attendees.  Such actions could reasonably cause disorganization and chaos in a correctional facility where order and an inmate's whereabouts are essential to upholding the safety and security of the facility.  Thus, there was presented at least some evidence supporting a finding of guilt against Ayers.

   Accordingly, defendants' motion should be granted on this ground.


### d. Right to Appeal

   "[C]ourts have repeatedly held that the Fourteenth Amendment does not require *any* administrative review of disciplinary convictions." <u>Hernadez v. Selsky</u>, No. 04-CV-552, 2006 WL 566476, at *3 & n.14 (N.D.N.Y. Mar. 7, 2006) (citing cases).  Where such a review does

occur, the Second Circuit "does not require examination of the entire record, independent assessment of the witnesses or even a weighing of the evidence.  Instead the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the [hearing officer]."  Afrika v. Selsky, 750 F. Supp. 595, 600 (S.D.N.Y. 1990) (citing Hill, 472 U.S. at 455-56) (internal quotation marks omitted).

Drown's disposition and Selsky's affirmance are both supported by at least some evidence, including the testimony of the confidential informant, Ayers, Brown, and Allan.  As discussed supra, this evidence constitutes a reasonable basis for determining that Ayers was acting, without authorization as charged.  Accordingly, defendants' motion on this ground should be granted.


### 2. False Misbehavior Reports

Liberally construing Ayers' complaint, he alleges that Allan issued a false misbehavior report.  As discussed supra, an inmate has a right not to be deprived of a liberty interest without due process.  However, a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest."  Freeman, 808 F.2d at 951.  "There must be more, such as retaliation against the prisoner for exercising a constitutional right."  Boddie, 105 F.3d at 862.  There is nothing in the record to indicate that the report was written in retaliation for Ayers engaging in constitutionally protected activities.  Accordingly, defendants' motion as to Ayers' claim on this ground should be granted.

**C. Qualified Immunity**

Defendants claim that even if Ayers' constitutional claims are substantiated, they are entitled to qualified immunity.  Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003).  However, even if the constitutional privileges "are clearly established, a government actor may still be shielded by qualified immunity if it was objectively reasonable for the . . . official to believe that his [or her] acts did not violate those rights."  Smith v. City of Albany, No. 03-CV-1157, 2006 WL 839525 *16 (N.D.N.Y. Mar. 27, 2006) (quoting Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights, of which a reasonable person would have known, were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230.  Here, the second prong of the inquiry need not be reached concerning Ayers' claims because, as discussed supra, accepting all of his allegations as true, Ayers has not shown that either defendant violated his constitutional rights.

Accordingly, it is recommended in the alternative that defendants' motion be granted on this ground.

### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for summary judgment (Docket No. 23) be **GRANTED** as to both defendants and all claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  December 2, 2009
        Albany, New York

_David R. Homer_

United States Magistrate Judge